**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLANIA**

| | | |
|---|---|---|
| **KAMARIA NELSON as Proposed Administrator of the Estate of SHAKA NELSON,** | : | **Case No.** |
| **Plaintiff,** | : | |
| **v.** | : | **ELECTRONICALLY FILED** |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JOHN WETZEL, JOHN RIVELLO, JOEL KOHLER, and JILL SPYKER,** | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

**Complaint**

Plaintiff Kamaria Nelson, proposed administrator of the Estate of Shaka Nelson, by and through her undersigned counsel, files the following Complaint.

**Jurisdiction and Venue**

1. This is an action for monetary relief for violations of the Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983; and also brought pursuant to 42 Pa.C.S.A. §§ 8301 (wrongful death) and 8302 (survival action).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4). The Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. Section 1367(a) to hear and adjudicate state law claims.

3. Plaintiff, as Proposed Administrator of the Estate of Decedent Shaka Nelson, is entitled to bring this action under the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301.

4. Plaintiff is entitled to bring this action on behalf of the Decedent, Shaka Nelson, under the Survival Act, 42 Pa.C.S.A. § 8302.

5. This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in Pennsylvania.

**Parties**

6. Plaintiff Kamaria Nelson is a citizen and resident of New York City, NY. Ms. Nelson is the natural sister of Decedent, Shaka Nelson. On December 1, 2021, Ms. Nelson filed to obtain a Letter of Administration on the Estate of Shaka Nelson. Ms. Nelson brings this action as Proposed Administrator of the Estate of Shaka Nelson.

7. Defendant Pennsylvania Department of Corrections is an agency of the Commonwealth of Pennsylvania that operates SCI Cambridge Springs and receives federal funding. The DOC is responsible for providing adequate medical health services to and creating policies that ensure appropriate medical treatment and safe housing to inmates. The Pennsylvania Department of Corrections operates facilities throughout the commonwealth of Pennsylvania. The principal office for the DOC is located in Mechanicsburg, Pennsylvania.

8. Defendant John Wetzel was at all relevant times hereto Secretary of the Pennsylvania Department of Corrections (DOC). Defendant Wetzel is sued in his individual capacity.

9. Defendant John Rivello was Superintendent at the SCI Huntingdon at all relevant times hereto. Defendant Rivello is sued in his individual capacity.

10. Defendant Joel Kohler was Deputy Superintendent for Facilities Management at SCI Huntingdon at all relevant times hereto. Defendant Kohler is sued in his individual capacity.

11. Defendant Jill Spyker was Deputy Superintendent for Centralized Services at SCI Huntingdon at all relevant times hereto. Defendant Spyker is sued in her individual capacity.

## Statement of Facts

12. Shaka Nelson was convicted of aggravated assault in Pennsylvania in March of 2019. He was to be held in the custody of the Pennsylvania Department of Corrections (DOC) at SCI Huntingdon.

13. While confined at SCI Huntingdon, Mr. Nelson reported an intention to harm himself. As an example, but not the only example of such behavior, on December 4, 2019, Mr. Nelson was admitted to the POC due to threats of self harm.

14. Despite the DOC being aware of Mr. Nelson's serious medical need for mental health care and vulnerability to suicide, the Defendants failed to provide medically necessary mental health treatment and failed to take reasonable measures to prevent Mr. Nelson from engaging in self-harm or suicide.

15. As an example, but not the only example, Defendants placed Mr. Nelson on "cell restriction", in or around November 2019 without regard to the increased risk of self harm resulting from such actions.

16. As another example, but not the only example, Mr. Nelson submitted official complaints alleging sexual abuse and harassment within the prison, yet proper actions were not taken.

17. Defendants deliberately deprived Mr. Nelson of necessary mental health care, including the absence of necessary and important counseling, therapy, and suicide risk assessment, ignoring the obvious risks to Mr. Nelson.

18. Despite knowledge of his condition, Defendants created and sustained conditions of incarceration that subjected Shaka Nelson to torture, causing him to take his own life by hanging on September 25, 2020.

19. Defendants failed to ensure that employees at SCI Huntingdon carried necessary equipment, which prevented proper response when Mr. Nelson was found.

20. Defendants Kohler and Spyker, as Deputy Superintendents of SCI Huntingdon, sat on the Program Review Committee that was responsible for assessing the relevant policies. Each failed to intervene with reasonable measures to prevent him from engaging in self-harm or suicide, notwithstanding their knowledge of his mental illness.

21. The Defendants were aware that prisoners with serious mental illness and/or vulnerability to suicide were more likely to engage in self-harm and suicide attempts.

22. Individual Defendants were aware that SCI Huntingdon warehoused prisoners with serious mental illness without necessary policies in place to protect them.

23. Individual Defendants knew that policies and practices existed in the DOC, including at SCI Huntingdon, which were causing serious harm and risk of harm to those with serious mental illness and/or vulnerable to suicide. Those policies and practices included:

a. Failure to ensure staffing levels that were medically necessary to ensure that staff could meet the needs of prisoners with serious mental illness and those who were vulnerable to suicide;

b. Acquiescing in a system of mental health care that provided a knowingly and deliberately inferior standard of care for non-medical reasons, severely limiting or refusing to provide drug and alcohol counseling, psychological counseling, and group or vocational therapy, as well as not providing clinical assessments with the frequency and in the conditions that are clinically indicated and medically necessary; inadequate monitoring of the effectiveness of medications; and use of medication as a substitute for more effective treatments; and

c. Failure to ensure that medical, psychological, psychiatric, security, and any other relevant records pertaining to prisoners with mental illness and those vulnerable to suicide were accessible to mental health staff so as to improve continuity of care and enable mental health staff to track the behavior, symptoms, risks, and harms that prisoners with mental illness and those vulnerable to suicide experienced.

24. Despite Individual Defendants being aware of the policies and practices causing harm to those with serious mental illness and/or vulnerable to suicide, they failed to take any measures to alter these policies and practices.

25. Individual Defendants did not provide for increased staffing to make certain that prisoners with serious mental illness were seen within the medically required frequency and in clinically appropriate settings.

26. Individual Defendants did not provide training to DOC staff on how to manage prisoners with serious mental illness and/or vulnerable to suicide so as not to cause mental health injuries, including psychological pain, self-harm and suicide.

27. The training that Individual Defendants failed to provide includes but is not limited to:

- Proper training on how to recognize behaviors and patterns of behavior that are indicative of serious mental illness.
- Proper training on suicide prevention.
- Training on the necessity of carrying a cut-away tool.

28. The failure to train DOC staff in how to manage prisoners who were vulnerable to suicide and/or seriously mentally ill by Individual Defendants resulted in Mr. Nelson's psychological decompensation and death.

## Causes of Action

## COUNT I – Deliberate Indifference to the Deprivation of Mr. Nelson's Basic Human Needs

29. Plaintiff re-alleges all previous paragraphs as if fully stated herein.

30. Defendants violated Shaka Nelson's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution. Defendants authorized, condoned, implemented, enforced, and/or acquiesced in policies and practices that withheld necessary treatment, which was known to Defendants and could have been provided to the Plaintiff. Because of his vulnerabilities, Mr. Nelson was known by Defendants to be at risk of suicide, yet he was deprived of the necessary care to prevent this because the Defendants were deliberately indifferent to these deprivations.

## COUNT II – Deliberate Indifference to Mr. Nelson's Serious Medical Needs

31. Plaintiff re-alleges all previous paragraphs as if fully stated herein.

32. Defendants violated Shaka Nelson's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution through their deliberate indifference to his serious medical need for mental health care.

33. Defendants violated Shaka Nelson's rights under the Eighth Amendment in regard to Mr. Nelson's serious mental health needs and vulnerability to suicide. Despite their knowledge of Mr. Nelson's mental health diagnoses and history that made him vulnerable to depression and suicidal ideation, and his persistent symptoms of withdrawal, depression, and a wish to die, Defendants exposed Mr. Nelson to an excessive risk by ignoring Mr. Nelson's mental health care needs and failing to take reasonable measures to prevent Mr. Nelson from engaging in self-harm or suicide, including but not limited to performing a comprehensive suicide risk assessment; providing psychological counseling; providing group or vocational therapy; seeing Mr. Nelson with sufficient frequency as indicated in the clinical record and according to his need for treatment. Defendants were aware that Mr. Nelson's mental health conditions created a strong likelihood that Mr. Nelson would attempt to harm or kill himself. Despite this knowledge, Defendants were deliberately indifferent to Mr. Nelson's serious mental health care needs, resulting in his death.

34. Defendants were responsible for authorizing and implementing policies and practices that were deliberately indifferent to prisoners who were in serious need of mental health care. These policies and practices caused the death of Mr. Nelson. These policies and practices include but are not limited to:

- Failure to ensure staffing levels that were medically necessary to ensure that mental health staff could meet the needs of prisoners with serious mental illness;
- Operating a system of mental health care that provided an inadequate and inferior standard of care for non-medical reasons, severely limiting or refusing to provide drug and alcohol counseling, psychological counseling, and group or vocational therapy, as well as not providing clinical assessments with the frequency and in the conditions that are clinically indicated and medically necessary; inadequate monitoring of the effectiveness of medications; and use of medication as a substitute for more effective treatments.
- Failure to ensure that medical, psychological, psychiatric, security, and any other relevant records pertaining to prisoners with serious mental illness were accessible to mental health staff so as to improve continuity of care and enable mental health staff to track the behavior, symptoms, risks, and harms that prisoners with serious mental illness experienced; and
- Failure to ensure possession of the cut away tool.

35. Despite Defendants being aware of the policies and practices causing harm to those with serious mental illness, they failed to take any measures to alter these policies and practices, such as:

- Providing for increased staffing so as to make certain that prisoners with serious mental illness were seen with the medically required frequency and in clinically

appropriate settings.

- Necessary monitoring of inmates with serious mental illness.
- Ensuring the cut away tool was carried by all employees.

## **COUNT III – Eighth Amendment Vulnerability to Suicide Claim**

36. Plaintiff re-alleges all above paragraphs as if fully stated herein.

37. Defendants were responsible for authorizing, condoning, implementing, and acquiescing in policies and practices that were deliberately indifferent to prisoners who were vulnerable to suicide. These policies and practices caused the death of Shaka Nelson. These policies and practices include but are not limited to:

- Failure to ensure staffing levels that were medically necessary to ensure that mental health staff could meet the needs of prisoners with serious mental illness

  and those who were vulnerable to suicide;
- Operating a system of mental health care that provided an inadequate and inferior standard of care for non-medical reasons, severely limiting or refusing to provide drug and alcohol counseling, psychological counseling, and group or vocational therapy, as well as not providing clinical assessments with the frequency and in the conditions that are clinically indicated and medically necessary; inadequate monitoring of the effectiveness of medications; and use of medication as a substitute for more effective treatments; and
- Failure to ensure that medical, psychological, psychiatric, security, and any other relevant records pertaining to prisoners with serious mental illness and

those vulnerable to suicide were accessible to mental health staff so as to improve continuity of care and enable mental health staff to track the behavior, symptoms, risks, and harms that prisoners with serious mental illness and those

vulnerable to suicide.

38. Despite Defendants being aware of the policies and practices causing harm to those with serious mental illness and/or vulnerable to suicide, they failed to take any measures to alter these policies and practices, such as:

- Providing for increased staffing so as to make certain that prisoners with serious mental illness were seen with the medically required frequency and in clinically appropriate settings.
- Necessary monitoring of inmates with serious mental illness.

## COUNT IV – Eighth Amendment Failure to Train Claim

39. Plaintiff re-alleges all above paragraphs as if fully stated herein.

40. Defendants failed to train DOC staff at SCI Huntingdon on how to manage prisoners with serious mental illness and those that were vulnerable to suicide in a manner that would not cause mental health injuries, including psychological pain, decompensation, self-harm and suicide. Defendants were deliberately indifferent to the need to train DOC personnel on how to manage prisoners with serious mental illness and those who were vulnerable to suicide despite knowing that the lack of training received by DOC personnel in this matter caused serious risks and harms to those with mental illness and those who were vulnerable to suicide. The failure to train led to Shaka Nelson's death. The training that supervisory Defendants failed to provide includes but is not limited to:

- Training on how to recognize behaviors and patterns of behavior that are indicative of serious mental illness.
- Training on suicide prevention.
- Training on the necessity of carrying a cut-away tool.

41. The need for more training was obvious and the failure to conduct this type of training resulted in Mr. Nelson's death.

## COUNT V – Wrongful Death

42. Plaintiff re-alleges all above paragraphs as if fully stated herein.

43. Plaintiff Kamaria Nelson is eligible to recover damages as a result of Mr. Nelson Palakovic's death pursuant to 42 Pa. C.S.A. § 8301.

44. During his lifetime, Shaka Nelson did not commence any action for the injuries that caused his death and no other action has been filed to recover damages for the wrongful death of decedent.

45. At all relevant times, all Defendants committed acts of willful misconduct and acted with reckless indifference, carelessness, and negligence in regard to the rights of Shaka Nelson.

46. As the direct and proximate result of the acts and omissions of these Defendants, Plaintiff has suffered the following damages:

a. Expenses of administration related to Shaka Nelson's death; and

b. All other damages permissible in a wrongful death action.

47. As a direct and proximate result of Defendants' acts and omissions described in this complaint, Plaintiff seeks punitive damages.

## COUNT VI – Survival Action

48. Plaintiff re-alleges all above paragraphs as if fully stated herein.

49. Plaintiff brings this survival action pursuant to 20 Pa. C.S.A. § 3373 and 42 Pa. C.S.A. § 8302.

50. As a direct and proximate result of Defendants' acts and omissions, these Defendants are liable for the following damages:

a. Shaka Nelson's pain and suffering during his confinement in the DOC, including prior to and at the time of his death;

b. Shaka Nelson's total estimated future earning power;

c. Shaka Nelson's loss of retirement and Social Security income;

d. Shaka Nelson's other financial losses suffered as a result of his death;

e. Shaka Nelson's loss of the enjoyment of life.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Award compensatory damages;

B. Award punitive damages;

C. Grant attorneys' fees and costs;

D. Such other relief as the Court deems just and proper.

## Jury Trial Demand

Plaintiff demands trial by jury in all claims so triable.

Respectfully submitted,

Dated: September 16, 2022

By: ____*/s/ Philip R. Berwish*____
Philip R. Berwish, Esq.
Berwish Law / Pa ID No. 28563
2 Anderson Lane
Princeton, New Jersey 08540-4210
Tel: 800 547 8717
Berwish@gmail.com
Of Counsel
to Law Office of William Igbokwe
28 Liberty Street, 6th Floor
New York, NY 10005
will@iwlaws.com